JONES *v.* STATE OF INDIANA.

[No. 13,626. Filed April 26, 1929. Rehearing denied July 31, 1929.]

*A. E. Gore*, for appellant.

*Arthur L. Gilliom*, Attorney-General, and *Harry L. Gause*, Deputy Attorney-General, for the State.

McMAHAN, P. J.—Appellant was convicted of unlawfully possessing intoxicating liquor and of maintaining a common nuisance in violation of §§4 and 24, Acts 1925 p. 144, §§2717 and 2740 Burns 1926.

The error assigned is the overruling of his motion for a new trial, under which it is contended that: (1) The verdict is contrary to law; (2) that there was error in admitting certain evidence; and (3) in overruling a motion to direct verdict for appellant.

In support of the contention that the verdict is contrary to law, appellant states three abstract propositions of law, without any attempt being made to apply them to any specific point in the instant case. This is not sufficient to present any question. *Oelfke* v. *State* (1923), 192 Ind. 602, 137 N. E. 553.

The next contention is that the court erred in permitting "Henry Boggess, Jesse Jones, Ferris Jay and others" to testify as to facts discovered and articles seized by them during a search of appellant's premises without having properly executed the search warrant by reading the same to him before they broke into and

searched his residence. Eight witnesses testified on the trial. Six of them testified for the State and two for the defendant. Appellant, in his recital of the evidence, has set out the testimony of but two of the eight witnesses, viz., Boggess and Jones. No attempt has been made to set out the testimony of the other six witnesses. The evidence shows that the officers, armed with a search warrant, went to the building occupied by appellant. The front room had formerly been used as a saloon, and, at the time of the search, it was being used as a place where soft drinks, tobacco, etc., were sold. There were several rooms in the rear of the barroom, with a door leading into one of such rooms from the barroom. The place had been raided and searched under search warrants four or five times prior to the time in question. On such occasions, no liquor was found in the barroom. The liquor was kept in one of the rear rooms, and, when a search was made, the liquor would be poured into the kitchen sink, and sometimes creosote was used to destroy the odor. The inference to be drawn from the evidence is that, when an officer came with a search warrant, a signal to that effect would be given to some one in the rear room through an electrical device, and that some of the liquor was, on each occasion, poured into the sink before the officers could get into the rooms where it was kept. On the occasion of the last search, the officers, with knowledge derived from past experiences, divided themselves into squads when they reached the buildings, some of them going to each of three doors. One squad knocked at a side door, but failed to gain admission. Appellant was in the barroom, and, hearing the noise at the side door, went out of the front door, where he was seen by the officers and taken back into the barroom, where the witness Boggess read the search warrant to him. As the search warrant was being read to appellant, Officer Jay came into the barroom, and, having

theretofore heard what sounded like the rattling of pans and glasses in the room to the rear of the barroom while he was at a door in the rear or side of the building, and with the idea in mind that they would have to work fast if they would be successful in getting any liquor before it was destroyed, he went to the door leading into the rear room and found the same locked from the inside with a Yale lock and an iron bar, so that it could not be opened by any one in the barroom. With this condition confronting him, he knocked a panel out of the door, reached through, unlocked the door, after which he and another officer went into the rear room, where they found two men. One of the men was sitting in a chair in a drunken condition. Officer Jones testified that he heard a noise in an adjoining room like the rattling of pans and people moving, that he ran to a side door, but not being able to get in the room, he then ran to the front door and entered the room through the door Jay had opened, and that, when he got in the room, two other officers were in there and were holding one of the men. These officers told Jones the liquor had been dumped. Jones took the goose neck or trap off from under the sink and found that it was filled with whisky.

Appellant makes no claim that the search warrant under which the search was made was illegal. His only contention is that the officers broke the door and entered the rear room before the search warrant was read in full to him, and that he had not been requested to, and had not refused to, open the door so a search of the other rooms could be made. Boggess testified that the search warrant was read to defendant before the door was broken, although he says he may not have read the name of the officer issuing it. An examination of the record discloses that officer Jones and some other officers, whose testimony is not set out in appellant's brief, were admitted into a room in the rear part of the

building by a woman who answered their knocking on the door, and that, when she was told the purpose of their visit, she told them it was all right and for them to go ahead and make the search. In view of the fact that appellant has not set out any of the testimony of the officers who entered with the consent of the woman, or of those who had hold of the man who was in the rear room when officer Jones entered that room, we hold the court did not err in allowing them to testify as to what they found. In fact, appellant makes no claim that there was any objection made to the admission of the testimony of any witness other than Boggess and Jones.

It is to be observed that the specification in the motion for a new trial is that the court erred in permitting witnesses Boggess, Jones, Jay and others to testify as to facts discovered. Jay was one of the officers who was in the room in the rear of the barroom before Jones got there, and we presume the "other" witnesses were also officers who were in that room and who probably saw the liquor poured into the sink. So far as Jay and the "other" witnesses are concerned, there is nothing in appellant's brief to show that any objection was made to their testifying to the finding of the liquor. An examination of the record discloses that the testimony of Jay and the "other" witnesses, whose testimony is not set out in the briefs, is sufficient to sustain the verdict.

The specification in the motion for a new trial is joint, in that it went to all of the witnesses jointly. It is a well-established rule that when a party takes a joint exception to all instructions given, or when he assigns as ground for a new trial the giving of a number of instructions, it is not error to overrule such a motion if any one of the several instructions is good, and we see no reason why the same rule should not apply in the instant case where the specification in the motion

is joint as to several witnesses and when there is no showing of error in allowing one or more of them to testify.

The fair conclusion to be drawn from the evidence is that appellant had caused the door, leading into the room where the liquor was, to be kept locked from the inside so as to hinder and delay the search until after the liquor had been destroyed. We are not impressed with the claim that the act of Jay in breaking the door in order to get into the rear room rendered the search illegal so as to make the testimony of all of the witnesses incompetent.

Appellant next contends the court erred in overruling his motion to direct the jury to return a verdict in his favor. No question is presented by such a specification. The error, if any, was not in overruling his motion, but in refusing to give an instruction to that effect. *Cook & Bernheimer Co.* v. *Hagedorn* (1921), 82 Ind. App. 444, 131 N. E. 788.

Judgment affirmed.